UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JOSEPH BRYANT SIMMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 06-CV-104-JMH |
| | ) |
| v. | ) |
| | ) |
| CITY OF HARRODSBURG, et al., | )   **MEMORANDUM OPINION AND ORDER** |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

      **         **          **          **          **

This matter is before the Court on Defendants' motion for summary judgment [Record No. 14]. The matter being fully briefed, it is now ripe for review.

## I. Factual Background

The factual background of this case was originally disputed by the parties' pleadings. However, during the course of discovery, Plaintiff did not respond to Defendants' first set of requests for admissions, sent on February 21, 2007. Fed. R. Civ. P. 36(a) states that "[a] matter is admitted unless, within 30 days after service of the request, [...], the party to whom the request is directed serves upon the party requesting the admission a written answer." FRCP 36(a). Pursuant to this rule, Defendants filed a notice of admissions by Plaintiff [Record No. 10], establishing Plaintiff's lack of timely answer and the resulting admission of each request. This memorandum will, therefore, adopt the facts as

propounded by Defendants and conclusively admitted by Plaintiff. Such conclusively established admissions may form the basis for granting summary judgment in favor of the moving party. *First Nat'l Bank Co. v. Ins. Co. of N. Am.*, 606 F.2d 760, 766 (7th Cir. 1979).

On the evening of March 23, 2005, Plaintiff Joseph Bryant Simms was present, along with three other persons, in a mobile home trailer parallel to Bohon Road (KY-390) in Mercer County, Kentucky. At that time, officers of the Harrodsburg Police Department executed a search warrant issued in Mercer District Court upon the belief of Defendant Officer Scott Elder that Plaintiff was manufacturing and storing methamphetamine in the trailer. Plaintiff was skilled and knowledgeable in the manufacture of methamphetamine, and the chemical ingredients necessary for the manufacturing of the substance were present inside the trailer. Plaintiff was either preparing to or was in the process of manufacturing methamphetamine.

The officers knocked twice on the front door of the trailer, announcing they had a search warrant, yet they received no response from within. They then used a ram to enter the front door of the trailer, and ordered all occupants, including Plaintiff, onto the ground. Plaintiff, however, refused the order, and began to dispose of evidence of the manufacture of methamphetamine in the kitchen area of the trailer. The officers then informed Plaintiff

2

that he was under arrest; however, he fled to the master bedroom where he opened the valve on a tank of anhydrous ammonia, releasing the chemical with the intent of causing bodily harm to the officers. Plaintiff then resumed destroying and disposing of evidence of the manufacture of methamphetamine. Officers again ordered Plaintiff to the ground, attempting to place him under arrest. Plaintiff, however, continued to dispose of the evidence of methamphetamine manufacture by throwing it in the toilet. In order to preserve the evidence, an officer pulled Plaintiff from the toilet, eventually handcuffing Plaintiff despite his physical struggling. An officer then pleaded with Plaintiff to peacefully leave the trailer, as the anhydrous ammonia in the air exposed both individuals to potentially serious bodily injury. Plaintiff continued to struggle and resist the officer's attempts to evacuate the trailer. As a result of Plaintiff's non-compliance, officers were forced to drag Plaintiff out the front door of the trailer, the closer back door having been screwed shut by Plaintiff.

The force used by Defendants was no more than reasonable and necessary to stop Plaintiff's efforts from destroying evidence and to overcome Plaintiff's efforts to resist arrest. At no time did any officer of the Harrodsburg Police Department spit on Plaintiff, or hit, punch, kick, stomp, or otherwise strike Plaintiff with any part of their person or with any other object.

3

## II. Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for

4

the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III. Analysis

Plaintiff asserts claims under 42 U.S.C. § 1983 and state law. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege a deprivation of a constitutional right and that the deprivation was caused by a person acting under the color of state law.

### A.  Standing to Bring Suit

Defendants argue that because Simms has admitted that he suffered neither physical nor mental injury as a result of the Defendants' actions, Plaintiff has no standing from which to bring suit.  For this conclusion, they cite *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982), *Yeager v. GMC*, 265 F.3d 389 (6th Cir. 2001), and *United*

*States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973). These cases are distinguishable, as they do not involve violations of 42 U.S.C. § 1983, as is alleged in the instant case. Plaintiff, however, relies upon *Chatman v. Slagle*, 107 F.3d 380 (6th Cir. 1997), which states that damages under § 1983 are available no matter how small or esoteric the injury suffered. "The severity of the harm should govern the amount [of damages], not the availability of recovery." *Id.* at 385. While this is certainly correct law, Plaintiff misses the point that there must be any damages pled before *Slagle* even applies. The basic purpose of § 1983 damages is to compensate plaintiffs for injuries that are suffered due to a violation of a constitutional right. No compensatory damages may be awarded where no injury is present. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307-8. Due to the established lack of injury attributable to the conduct of the Defendants [Record No. 10, ¶¶ 28-29], there is no question of material fact, and summary judgment is proper on Plaintiff's § 1983 claim.

**B.   Respondeat Superior Theory**

Plaintiff seeks to hold the City of Harrodsburg liable for the actions of its employee police officers under the common law tort theory of respondeat superior or vicarious liability. Defendant claims, however, that a municipality cannot be held liable under respondeat superior theories on a § 1983 claim. This principle,

enumerated in *Canton v. Harris*, 489 U.S. 378, 385 (1989), states that for a city to be held liable for actions of employees, there must be a direct link between an actual municipal policy and the alleged deprivation of constitutional rights. Plaintiff's claim that the City of Harrodsburg's supervision of the Defendant officers "amounts to an execution and/or implementation of a policy, statement, regulation, or decision" is insufficient for this purpose. Liability may not be imposed on a municipality "unless deliberate action attributable to the municipality itself is the "moving force" behind the plaintiff's deprivation of federal rights." *Bd. of the County Comm'r v. Brown*, 520 U.S. 397, 399 (1997)(citing *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978)). Therefore, summary judgment is proper for the City of Harrodsburg, to the extent that Plaintiff seeks to hold the City liable for the actions of its officers under the theories of respondeat superior or vicarious liability.

**C.  Official Capacity Claims**

Both Plaintiff and Defendant have agreed that any action filed against Defendants in their official capacities as police officers are actually actions filed against the City of Harrodsburg. *Kentucky v. Graham*, 473 U.S. 159 (1985). As the City of Harrodsburg has been named as a party, Plaintiff's official capacity claims are redundant and should therefore be dismissed.

**D.  Officers' Claims of Qualified Immunity**

7

Plaintiff claims that the actions of Defendant police officers are not entitled to immunity as they can be held personally liable for action taken in the scope of their official duties. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 417 (6th Cir. 2002). While this is true as a general rule, Plaintiffs fail to consider or address the doctrine of qualified immunity, which protects certain government officials from liability. The threshold inquiry to be be made by a court is whether a plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If no violation is found, then the inquiry ends and qualified immunity applies. However, if a constitutional violation is evident, the Court must next determine if the defendant's actions violated clearly established constitutional rights of which a reasonable person would have known. *Id.* Each constitutional violation claimed by Plaintiff will be evaluated separately.

### 1. Unreasonable Search and Seizure

Plaintiff claims that Defendants executed a search warrant that did not describe with particularity the location where Plaintiff was located, and that the search warrant was therefore illegal, rendering the subsequent entry invalid. This allegation, however, is unfounded, as the search warrant executed on March 24, 2005, clearly describes "a white mobile home trailer sitting between a wooden barn and 4035 Bohon Road. The trailer sits

8

parallel with Bohon Road. The trailer shares a mailbox with 4035 Bohon Road.  The residence in question sits on the north side of Ky. 390 (Bohon Road)."  This description establishes that the trailer in question was described in the warrant with sufficient particularity to satisfy the Fourth Amendment's particularity requirement.  Plaintiff does not dispute that there was probable cause to support his arrest.  Accordingly, there was no Fourth Amendment violation, and the Defendant officers are entitled to qualified immunity on this claim.

### 2.  Excessive Force

Plaintiff claims that Defendants exercised excessive force in effecting his arrest.  The United States Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), held that in excessive force claims brought under 42 U.S.C. § 1983, the court should identify the specific constitutional right that the plaintiff claims was infringed, and evaluate the claim based on that right. *Id.* at 393-94.  Further, a claim of excessive force arising in the context of the arrest of a free citizen is best evaluated under a Fourth Amendment framework.  *Id. See also Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985).  According to *Graham*, the proper standard for evaluating excessive force claims under the Fourth Amendment is whether the force applied was objectively reasonable. *Graham*, 490 U.S. at 388. In making this determination, a court must evaluate a use of force "from the perspective of a reasonable officer on the

9

scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Plaintiff admits that the Defendant officers used only such force as was reasonable and necessary to stop Plaintiff's efforts to destroy evidence, and to overcome Plaintiff's efforts to resist arrest [Record No. 10, ¶ 27]. Further, Plaintiff initially claimed that the officers hit him and struck him with weapons outside the trailer; however, Plaintiff's admissions conclusively establish that no such excessive force was used by the Defendants [Record No. 10, ¶ 28]. The use of reasonable force as described above entirely fulfills the demands of the Fourth Amendment inquiry; therefore, there is no violation of a clearly established constitutional right.

### 3. Involuntary Servitude

Plaintiff claims that Defendants violated his rights under the Thirteenth Amendment to the United States Constitution. The application of the Thirteenth Amendment is limited to slavery and involuntary servitude based on racially based claims of inequality. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 623, n. 41 (1979); see also *Butler v. Perry*, 240 U.S. 328, 332 (1916). Plaintiff has made no claim that the incident giving rise to this action was in any way racially motivated. Thus, there is no clear violation of a constitutional right implicated by the Thirteenth Amendment.

10

**4. Cruel and Unusual Punishment**

Plaintiff makes a claim under the Eighth Amendment of the United States Constitution, which prohibits the use of cruel and unusual punishment.  This guarantee, however, applies only to punishment inflicted upon an individual after the conviction and sentencing stages of the criminal justice process. *Graham*, *supra*, 490 U.S. at 393, n. 6; see also *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).  The Eighth Amendment is, therefore, inapplicable in the context in which Plaintiff seeks its protection.  Thus, there is no violation of Plaintiff's constitutional right.

No violation of any of the above constitutional rights was established by Plaintiff's allegations and the facts on record. Because there is no genuine issue of material fact regarding qualified immunity for the officers, Defendants are entitled to summary judgment on Plaintiff's cruel and unusual punishment claims.

**E.  Failure to Train or Supervise**

Plaintiff claims that the Defendant City of Harrodsburg is liable as a result of its failure to train or supervise its police officers.  Cities may be held liable in actions under 42 U.S.C. § 1983 for failure to properly train its law enforcement officers. *City of Canton v. Harris*, 489 U.S. 378 (1989).  This applies,

11

however, only to certain circumstances.  *Id.* at 380.  "Inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388; sSee also *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (stating that city policymakers must have made a deliberate choice to follow a violative course of action for a plaintiff to sustain a claim under § 1983).

In this case, the Plaintiff has made no claim that the City of Harrodsburg or any of its officers have created or followed a policy of deliberate indifference to the rights of individuals being arrested by its police officers.  Thus, summary judgment for Defendants is appropriate on the claim of failure to train or supervise.

**F.  Plaintiff's State Law Claims**

**1.  Unreasonable Search and Seizure**

Plaintiff claims that the actions of the Defendants constitute an unreasonable search and seizure under the Kentucky Constitution, Sections 1, 2, and 10.  The Supreme Court of Kentucky has held that there is little material difference between the protections from search and seizure guaranteed by Kentucky's Section 10 and the Fourth Amendment to the United States Constitution.  *Benge v. Commonwealth*, 321 S.W.2d 247 (Ky. 1959).  Therefore, this state

12

provision is interpreted in consonance with the analogous federal provision. The former provides no broader protection than the latter. *Holbrook v Knopf*, 847 S.W.2d 52, 55 (Ky. 1992). Kentucky law requires only that a search warrant be sufficient to reasonably identify the premises to be searched. *Commonwealth v. Appleby*, 586 S.W.2d 266, 269 (Ky. Ct. App. 1978). Plaintiff admits that the location of the trailer was the same as the location stated in the search warrant [Record No. 10, ¶ 1]. Therefore, there is no showing of an unreasonable search by the Defendants.

**2.  Cruel and Unusual Punishment**

Plaintiff alleges that he experienced cruel and unusual punishment at the hands of the Defendant officers, in violation of Kentucky Constitution Section 17. This section is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky courts. *See Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968). As discussed above, the requirements of the Eighth Amendment apply only after an individual has been convicted of and sentenced for a crime. Plaintiff had not been convicted of any crime; in fact, he was in the process of being arrested when this incident occurred. Therefore, the Eighth Amendment, and thereby, Section 17 of Kentucky's Constitution, are inapplicable to Plaintiff. Summary judgment in favor of Defendants is proper for this claim.

### 3.  Excessive Force

Plaintiff alleges that the Defendant police officers violated a Kentucky law which prohibits the use of excessive force.   KRS 431.025 requires that Kentucky police officers not use "unnecessary force or violence" in arresting a suspect.  This statute has been interpreted to allow officers to use such force as appears necessary or reasonable to take a person into custody.  *City of Lexington v. Gray*, 499 S.W.2d 72 (1973); *see also* Maggard v Commonwealth, 22 S.W.2d 298 (1929). More recently, in *Dunn v. Felty*, 226 S.W.3d 68, 74 (2007), the Supreme Court of Kentucky explained the factors for excessive force in the arrest context. "An officer is liable for excessive force in two circumstances: (1) he or she has reasonable grounds for making the arrest but used more force than necessary; [or] (2) he or she only used necessary force in effecting the arrest but there were, in fact, no reasonable grounds for the arrest.  *See also Lexington-Fayette Urban County Gov't v. Middleton*, 555 S.W.2d 613, 618-19 (Ky. Ct. App. 1977) and *Hughes v. City of Louisville*, 2007 WL 1035008 (W.D.Ky. 2007).  Applying this rule of law, there are two questions of fact that must be evaluated to determine the propriety of an excessive force claim: the reasonableness of the arrest, and whether more force than necessary was used.  In this case, both of these relevant questions have been answered by way of Plaintiff's admissions.  Plaintiff admits that Defendants used no more force

14

than was reasonable and necessary; that they did not hit, punch, kick, stomp, or otherwise strike Plaintiff; and that Defendants did not cause any physical, mental, or emotional injuries to Plaintiff. [Record No. 10, ¶¶ 27-29]. Further, Plaintiff has not argued that the police did not have probable cause to make the arrest. Therefore, both criteria of the excessive force analysis are resolved in favor of the Defendants, and summary judgment is appropriate on this claim.

### 4.  Excessive Execution

Defendants' motion for summary judgment [Record No. 14] is correct in its assertion that no Kentucky case has ever established the existence of a claim called excessive execution.  It was, however, a claim made by a plaintiff in a § 1983 case, *Ferguson v. City of Louisville*, 199 F. Supp.2d 625 (W.D. Ky. 2002). The Court there, however, gave no consideration to the claim, and it was not mentioned again in the opinion.  The term appears in *Black's Law Dictionary* (8th ed. 2004), as "an exercise of a power of appointment exceeding the limits (express or statutory) set on the use of power."  The term has been used in Kentucky in only one other case, describing execution of power over an estate. *Johnson v. Yates' Devisees*, 39 Ky. 491 (Ky. 1839).  As excessive execution is not a valid tort claim recognized by Kentucky law, there is no need to evaluate it on its merits, and summary judgment is

appropriate.

### 5. Assault

Plaintiff claims that he was assaulted and battered by
Defendants, in violation of Kentucky.  The factors for assault and
battery of a police officer were previously addressed, *supra*, in
the discussion of the excessive force test articulated in *Dunn v.
Felty.* Given the admissions made by Plaintiff regarding the
reasonableness of the Defendants' actions, summary judgment is
proper on the claims of assault and battery.

### 6. Tort of Outrage

Plaintiff claims the common law tort of outrage, which is more
commonly known as intentional infliction of emotional distress.
Under Kentucky law, four elements must be proven to state such a
claim: (1) The wrongdoer's conduct must be intentional or reckless;
(2) the conduct must be outrageous and intolerable in that it
offends against generally accepted standards of decency and
morality; (3) there must be causal connection between wrongdoer's
conduct and emotional distress; and (4) emotional distress must be
severe.  *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. Ct. App.
2001);see also *Hubbard v. Gross*, 199 Fed.Appx. 433 (6th Cir. 2006).

Plaintiff's claim fails on each of the four elements of
intentional infliction of emotional distress.  There is no showing
of intent or recklessness by Plaintiff, as his admissions establish

16

that the conduct of the officers was reasonable given the circumstances.  For the same reason, there is no showing of the second element, that the conduct was outrageous or intolerable. The third and fourth elements must also fail, as both require that Plaintiff have suffered emotional distress due to Defendants' conduct.  Plaintiff admits that any mental or emotional injuries he suffered were caused solely and proximately by his own actions and not by that of Defendants.  [Record No. 10, ¶ 29].  As none of the four elements of an intentional infliction of emotional distress claim are met, summary judgment for Defendants on this claim is proper.

**G.  Punitive Damages**

Plaintiff has claimed that he is entitled to an award of punitive damages against Defendants.  As against the City of Harrodsburg, any claims of punitive damages must be denied.  *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981), states that a municipality is not liable for punitive damages under § 1983 unless such damages have been expressly authorized by statute.  Plaintiff makes no such claim.  The justification for this rule is that punitive damages should serve a deterrent factor, and there is no deterrent affecting the actions of a municipal organization such as the City of Harrodsburg.  Included in this rule are all claims against Officers Jason Elder and Scott Elder in their official capacities, as any such claims are to be treated as claims against

17

the municipality that employs them. *Kentucky v. Graham*, *supra*.

In their individual capacities, the officers are not automatically shielded from an award of punitive damages. Plaintiff is correct that punitive damages are authorized for the misconduct of individual public officers on the same basis as other individual defendants. *Smith v. Wade*, 461 U.S. 30, 35 (1983). However, *Smith* utilizes the common law rule from *Restatement (Second) of Torts* § 908(2) (1979) to severely limit the availability of such damages: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Smith*, *supra*, at 46-47. As previously discussed, the Defendant officers did not recklessly or intentionally violate the Plaintiff's constitutional rights. Therefore, Plaintiff is not entitled to punitive damages.

### IV. Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment [Record No. 14] be, and the same hereby is, **GRANTED**.

This the 21st day of September, 2007.



Signed By:

*Joseph M. Hood*

United States District Judge

18